Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
*Laura Barrera
Assistant Federal Public Defender
Michigan State Bar No. P80957
411 E. Bonneville Ave., Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Laura_Barrera@fd.org


*Attorney for Petitioner Alexander Suarez-Ramirez

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ALEXANDER SUAREZ-RAMIREZ<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States; KRISTI NOEM, Secretary, United States Department of Homeland Security; MICHAEL BERNACKE, Field Director, Salt Lake City Office; TODD LYONS, Acting Director; REGGIE RADER, Henderson Chief of Police,<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

Personal Information

1.    (a)    <u>Alexander Suarez-Ramirez</u>

(b)    Other names used:

2.    Place of confinement:

(a)    <u>Henderson Detention Center</u>

(b)    <u>18 E. Basic Road, Henderson, NV 89015</u>

(c)    Case number or numbers: <u>My Alien No. is 241-468-800.</u>

3.    I am currently being held on orders by federal authorities: <u>United States Immigration and Customs Enforcement.</u>

4.    I am currently being held in <u>immigration detention based on an order of removal dated July 14, 2025. I was granted withholding of removal to Cuba, then was subsequently ordered removed again on August 22, 2025.</u>

Decision or Action You Are Challenging

5.    What are you challenging in this petition: <u>immigration detention.</u>

6.    Provide more information about the decision or action you are challenging:

(a)    Name and location of the agency or court: <u>United States Immigration and Customs Enforcement</u>

(b)    Docket number, case number, or opinion number: <u>My Alien No. is 241-468-800.</u>

(c)    Decision or action you are challenging: <u>I'm challenging my continued detention by ICE even though I cannot be removed to my country of Cuba, and ICE's intention to remove me to a third country is without adequate due process and protection.</u>

<u>I was taken into custody by ICE in May 2025, and have been detained in ICE custody since then.</u>

Your Earlier Challenges of the Decision or Action:

7–9.    First, second, and third appeals: <u>None</u>

10.    Motion under 28 U.S.C. § 2255: <u>N/A</u>

11.    Appeals of immigration proceedings:

Does this case concern immigration proceedings? <u>Yes</u>

(a)    Date you were taken into immigration custody: <u>May 2025</u>

(b)    Date of the removal or reinstatement order: <u>I was ordered removed on</u> <u>July 14, 2025</u>; <u>August 22, 2025.</u>

(c)    Did you file an appeal with the Board of Immigration Appeals? <u>No</u>

If "Yes," provide answers.

(1)    Date of filing:

(2)    Case number:

(3)    Result:

(4)    Date of result:

(5)    Issues raised:

(d)    Did you appeal the decision to the United States Court of Appeals? <u>No</u>

If "Yes," provide answers.

(1)    Name of court:

(2)    Date of filing

(3)    Case number:

(4)    Result:

(5)    Date of result:

(6)    Issues raised:

12.    Other appeals:

Other than the appeals listed above, have you filed any other petition, application, or motion about the issues raised in this petition?    ☐Yes    ☒No

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 2241 (granting general habeas authority to district courts); Art. 1 § 9, cl. 2 of the U.S. Constitution (the "Suspension Clause"); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 2201, 2202 (Declaratory Judgment Act).

Federal district courts have jurisdiction to hear habeas claims by non-citizens challenging the lawfulness of their detention. *See e.g. Zadvydas v. Davis*, 533 U.S. 678 (2001). Federal courts also have federal question jurisdiction, through the Administrative Procedures Act (APA) to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA claims are cognizable in habeas. 5 U.S.C. § 703. The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Petitioner's continued detention violates his constitutional due process rights, and constitutes arbitrary and capricious agency action, and is an abuse of discretion.

Venue is proper in this district pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is detained within this district at the Henderson Detention Center in Henderson, Nevada.

Accordingly, Petitioner's habeas petition is properly before this court.

## PARTIES

Alexander Suarez-Ramirez is a citizen of Cuba. He is detained in the control and custody of Respondents in Nevada.

Reggie Rader is the Chief of Police and oversees the Henderson Detention Center. Rader, in his official capacity, is the immediate custodian of Petitioner.

Michael Bernacke is the Field Director of the Salt Lake City Office of ICE Enforcement and Removal Operations, which has jurisdiction of enforcement and removal operations over detention facilities in Nevada, including Henderson

4

Detention Center where Petitioner is detained. Bernacke, in his official capacity, is a legal custodian of Petitioner.

Todd Lyons is the Acting Director of Immigration and Customs Enforcement, which is responsible for administering and enforcing immigration laws, including the detention and removal of immigrants. Lyons, in his official capacity, is a legal custodian of Petitioner.

Kristi Noem is the Secretary of the Department of Homeland Security, which oversees ICE. Noem, in her official capacity, is the ultimate legal custodian of Petitioner.

Pam Bondi is the Attorney General of the United States. She oversees the immigration court system, which is housed within the Executive Office for Immigration Review (EOIR) and includes all immigration courts and the Board of Immigration Appeals (BIA). She is named in her official capacity.

### STATEMENT OF FACTS

Brief statement regarding immigration history and detention:

Alexander Suarez-Ramirez is a citizen of Cuba who was detained by ICE in May 2025 and has remained in detention since. He was ordered removed to Cuba on July 14, 2025, but granted withholding of removal. On August 6, 2025, a motion to reopen immigration judge jurisdiction was granted. Just two weeks later, on August 22, 2025, the immigration judge again ordered Mr. Suarez-Ramirez's removal. No appeal is pending. Additional details about the motion to reopen and second removal order are presently unknown, but ICE has attempted several times to remove Mr. Suarez-Ramirez to Mexico by force. Undersigned counsel understands that Mr. Suarez-Ramirez explained to ICE agents that before his May 2025 detention, Mr. Suarez-Ramirez was removed to Mexico, where he was robbed and sexually assaulted. Thus, Mr. Suarez-Ramirez has good reason to fear being

removed to Mexico again. On the third instance of trying to remove him to Mexico, counsel understands that Mr. Suarez-Ramirez was so scared to be sent to Mexico that he defecated on himself. Mr. Suarez-Ramirez contacted undersigned counsel's office for assistance in filing this habeas corpus petition. He does not read, write, and understand English sufficiently to file this petition on his own. There is no indication that a bond hearing has been set for Mr. Suarez-Ramirez.

LEGAL FRAMEWORK

## I.    Withholding of Removal under the Immigration and Nationality Act.

Noncitizens in removal proceedings have three primary forms of relief from removal based on a fear of returning to their home country: asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An applicant may be ineligible for asylum for several reasons such as failing to apply within one year of entering the United States. *See* 8 U.S.C. § 1158(a)(2). There are fewer restrictions on eligibility for withholding of removal under the INA, and no restrictions on eligibility for deferral of removal under the CAT. *See* 8 U.S.C. §1231(b)(3)(B); 8 C.F.R. § 1208.16.

To be granted INA withholding, an applicant must show that "his life or freedom would be threatened in the country to which he would be removed on account of one of the five protected grounds [race, religion, nationality, political opinion, and membership in a particular social group]." *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1092 (9th Cir. 2005) (internal quotations omitted). The burden required to win withholding of removal is higher than what is required to win asylum. *Id*. When a noncitizen wins withholding of removal, the IJ simultaneously enters a removal order to the person's country of origin but withholds that order with respect to the country of removal for which the noncitizen established a likelihood of persecution. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531–532 (2021). The withholding grant and accompanying removal order become final on the

date they are issued if both parties waive appeal, or at the conclusion of the 30-day period to file an appeal if no appeal is filed. 8 C.F.R. § 1241.1. A noncitizen who has been granted withholding cannot be removed to the country for which they demonstrated a likelihood of persecution.

## II.  Removal to a Third Country for Individuals Granted Withholding of Removal

### A.  Statutory guidance on third country removals

A noncitizen who has been granted withholding cannot be removed to the country for which they demonstrated a likelihood of persecution. However, ICE can arrange for removal to another country. This is known as a "third country" because it is a country other than the one designated on the noncitizen's removal order. *See* 8 C.F.R. § 1208.16(f). Specific criteria for identifying a third country for removal are prescribed by statute. For example, the law provides that a noncitizen with a removal order may be removed to a non-designated country of which the noncitizen is a "subject, national or citizen."  8 U.S.C. § 1231(b)(2)(D). ICE may also remove a noncitizen with a removal order to the country from which they were admitted to the U.S.; the country from which the noncitizen departed for the U.S. or a foreign territory contiguous to the U.S.; a country in which the noncitizen resided before entering the country from which they entered the U.S.; the noncitizen's country of birth; the country that had sovereignty over the place of birth at the time of birth; the country in which the birthplace is located at the time of the removal order; and, "if impracticable, inadvisable, or impossible to remove the [noncitizen] to each country described [above]," ICE may remove a noncitizen to "another country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E).

Notwithstanding the criteria for removal to a third country, ICE may not remove a noncitizen to a country where the noncitizen's life or freedom would be

threatened on the basis of the five protected grounds. 8 U.S.C. § 1231(b)(3)(A). The Supreme Court has emphasized the importance of existing avenues of relief from removal (such as applications for asylum, withholding of removal, and protection under the convention against torture) for providing protection against removal to a third country where a noncitizen would be in danger. *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) ("If aliens would face persecution or other mistreatment in the country designated under § 1231(b)(2), they have a number of available remedies: asylum, § 1158(b)(1); withholding of removal, § 1231(b)(3)(A); relief under an international agreement prohibiting torture, see 8 CFR §§ 208.16(c)(4), 208.17(a) (2004); and temporary protected status, 8 U.S.C. § 1254a(a)(1))"; *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (recently holding that non-citizens "must receive notice" that "they are subject to removal" to a third country and that such notice must be provided "within a reasonable time and in such a manner as will allow the[] [non-citizen] to actually seek . . . relief.") (quoting *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025)).

The government itself has previously acknowledged this limitation on removal to a third country. In oral argument before the Supreme Court in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), the following exchange took place between the then-Assistant to the Solicitor General, Vivek Suri, and Justice Kagan:

> JUSTICE KAGAN: …suppose you had a third country that, for whatever reason, was willing to accept [a noncitizen]. If…that [noncitizen] was currently in withholding proceed--proceedings, you couldn't put him on a plane to that third country, could you?
>
> MR. SURI: We could after we provide the [noncitizen] notice that we were going to do that.
>
> JUSTICE KAGAN: Right.
>
> MR. SURI: But, without notice –

8

JUSTICE KAGAN: So that's what it would depend on, right? That – that you would have to provide him notice, and if he had a fear of persecution or torture in that country, he would be given an opportunity to contest his removal to that country. Isn't that right?

MR. SURI: Yes, that's right.

JUSTICE KAGAN: So, in this situation, as to these [noncitizens] who are currently in withholding proceedings, you can't put them on a plane to anywhere right now, isn't that right?

MR. SURI: Certainly, I agree with that, yes.

JUSTICE KAGAN: Okay. And that's not as a practical matter. That really is, as -- as you put it, in the eyes of the law. In the eyes of the law, you cannot put one of these [noncitizens] on a plane to any place, either the -- either the country that's referenced in the removal order or any other country, isn't that right?

MR. SURI: Yes, that's right.

*See* Transcript of Oral Argument at 20–21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

**B.    Trump Administration policies on third country removal**

Until recently, it was exceedingly rare that the government would pursue removal to a third country for an individual granted INA withholding of removal or CAT protection. This information is not routinely released by ICE, but data obtained through a Freedom of Information Act request revealed that in fiscal year 2017, just 21 people who had been granted withholding of removal were removed to a third country.[1] That is 1.6% of the people granted withholding that year. But,

---

[1] American Immigration Council, *The Difference Between Asylum and Withholding of Removal*, at 7, available at https://www.americanimmigrationcouncil.org/wp-

based on the data, the individuals removed were not necessarily people who had been granted withholding in 2017—just 21 people out of all the people with withholding of removal grants in the U.S., granted at any time, were removed. Further, it's likely that some of those people had some form of permanent immigration status in the country they were removed to.

On March 30, 2025, Respondent Kristi Noem, the Secretary of the Department of Homeland Security, issued guidance to ICE and other DHS agencies regarding third country removals. This memo states that, prior to a noncitizen's removal to a third country, "DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured."[2] The memo continues that, where a country has provided such assurances and the U.S. government believes them to be credible, a noncitizen may be removed to that country "without the need for further procedures." In other words, an individual may be removed without providing notice or an opportunity to contest removal to that third country.

The March 30th memo also states that DHS will remove noncitizens even to third countries that have not provided diplomatic assurances that noncitizens deported from the U.S. will not be persecuted or tortured.[3] In such cases, DHS will inform the noncitizen of removal to the intended country but will not affirmatively ask the noncitizen if they fear being removed to that country.[4] DHS will refer any noncitizen that affirmatively states a fear of removal to a third country to USCIS for a screening for eligibility for withholding of removal and/or CAT protection as to

---

content/uploads/2025/01/the_difference_between_asylum_and_withholding_of_removal.pdf (last visited August 21, 2025).

[2] P.Ex. 6 at 3.

[3] P.Ex. 6 at 4

[4] P.Ex. 6 at 4.

the intended third country.[5] USCIS will then make a determination about whether the noncitizen has established that they will "more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal."[6] If USCIS determines that the noncitizen did not meet that burden, they will be removed.[7] If the noncitizen does make a showing to the satisfaction of USCIS, USCIS will notify ICE, and the ICE Office of the Principal Legal Advisor (OPLA) may reopen immigration court proceedings for the noncitizen to seek withholding or CAT protection from removal to the third country.[8] "Alternatively, ICE may choose to designate another country for removal."[9] The memo provides no limitation on how many times ICE could designate a new third country for removal upon a noncitizen's showing of a well-founded fear of removal to a particular country.

On July 9, 2025, Respondent Todd Lyons sent additional guidance to ICE employees regarding third country removals ("July 9 Directive").[10] The directive was issued in light of the Supreme Court's decision to stay the injunction in *D.V.D. v. Department of Homeland Security*, No. 25-10676 (D. Mass.). It reiterated the procedures from the March 30 memo and provided additional details regarding how to deal with third country removals to countries that have not provided credible assurances that U.S. deportees will not be persecuted or tortured. It added that, in such cases, an ICE officer will serve the noncitizen with a Notice of Removal including the intended country and that the notice must be read in a language the

---

[5] P.Ex. 6 at 4.

[6] P.Ex. 6 at 4.

[7] P.Ex. 6 at 4.

[8] P.Ex. 6 at 4.

[9] P.Ex. 6 at 4.

[10] P.Ex. 7.

noncitizen understands.[11] ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal" but that in "exigent circumstances" ICE may remove a noncitizen to a possible-torture third country in as little as six hours after service of the Notice of Removal "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[12] Generally, if a noncitizen does not affirmatively state a fear of persecution or torture within 24 hours of service of the Notice of Removal, ICE may proceed with removal to the identified third country.[13]

### III.    Detention of Noncitizens Granted Withholding of Removal

#### A.    Statutory framework

Section 1231 of the INA governs the detention of noncitizens during and beyond the "removal period." The removal period begins once a noncitizen's removal order becomes administratively final and lasts for 90 days, during which ICE "shall remove the [noncitizen] from the United States" and "shall detain the [noncitizen]" as it carries out the removal. 8 U.S.C. § 1231(a)(1)-(2). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

The Supreme Court considered the issue of indefinite detention under 8 U.S.C. §1231(a)(6) in the case *Zadvydas v. Davis*, 533 U.S. 678 (2001). In that case, the Court acknowledged that allowing a noncitizen to be detained indefinitely after the statutory removal period would raise "serious constitutional concerns" and, as a result, held that 8 U.S.C. § 1231(a)(6) contains an implicit time limit. *Id.* at 682. The Court further held that 8 U.S.C. § 1231(a)(6) authorizes detention only for "a

---

[11] P.Ex. 7 at 2.

[12] P.Ex. 7 at 2.

[13] P.Ex. 7 at 3.

period reasonably necessary to bring about the [noncitizen]'s removal from the United States" and that six months of detention after the removal order is final is "presumptively reasonable." *Id.* at 689, 701.

Importantly, the *Zadvydas* court did not say the presumption is irrebuttable, and a variety of courts across the country that have considered the issue have found the presumption of reasonableness during the first six months of post-removal order detention can be rebutted. *See Munoz-Saucedo v. Pittman,* No. CV 25-2258 (CPO), 2025 WL 1750346, at *5 (D.N.J. June 24, 2025) (analyzing the issue and collecting case). "Within the six-month window," the noncitizen bears the burden of "prov[ing] the unreasonableness of detention." *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008). After six months, there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to justify continued detention. *Zadvydas*, 533 U.S. at 701. "Whether detention is 'reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority…The basic federal habeas corpus statute grants the federal courts authority to answer that question.'" *Medina v. Noem, et al., Respondents*, No. 25-CV-1768-ABA, 2025 WL 2306274, at *6 (D. Md. Aug. 11, 2025) (citing *Zadvydas*, 533 U.S. at 699).

### B.    DHS Regulations

DHS regulations provide that, before the end of the 90-day removal period, the local ICE field office with jurisdiction over the noncitizen's detention must conduct a custody review to determine whether the noncitizen should remain detained. *See* 8 C.F.R. § 241.4(c)(1), (h)(1), (k)(1)(i). If the noncitizen is not released at the end of the removal period or in the three months that follow, jurisdiction transfers to ICE headquarters (ICE HQ), which must conduct a custody review before or at 180 days. 8 C.F.R. § 241.4(c)(2), (k)(2)(ii).

To comply with *Zadvyas*, DHS issued additional regulations in 2001 that established "special review procedures" to determine whether detained noncitizens with final removal orders are likely to be removed in the reasonably foreseeable future. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56, 967 (Nov. 14, 2001). Subsection (i)(7) was added to 8 C.F.R. § 241.4, which added a supplemental review procedure that ICE HQ must initiate when "the [noncitizen] submits, or the record contains, information providing a substantial reason to believe that removal of a detained [noncitizen] is not significantly likely in the reasonably foreseeable future." 8 C.F.R. § 241.4(i)(7). Under this procedure, ICE HQ evaluates the foreseeability of removal by analyzing factors such as the history of ICE's removal efforts to third countries. *See* 8 C.F.R. §241.13(f). If ICE HQ determines that removal is not reasonably foreseeable but nonetheless seeks to continue detention based on "special circumstances," it must justify the detention based on narrow grounds such as national security or public health concerns or by demonstrating by clear and convincing evidence before an IJ that the noncitizen is "specially dangerous." 8 C.F.R. § 241.14(b)-(d), (f).

## C.    ICE Policy

Consistent with the statutory and regulatory scheme, long-standing ICE policy favors the prompt release of noncitizens who have been granted withholding or CAT relief. In 2000, the then-Immigration and Naturalization Service (INS)[14] General Counsel issued a memorandum clarifying that 8 U.S.C. § 1231 authorizes but does not require the detention of noncitizens granted withholding of removal or CAT relief during the 90-day removal period.[15] A 2004 ICE memorandum turned

---

[14] INS, housed within the Department of Justice, became ICE after the formation DHS in 2002.

[15] P. Ex. 1 at 2.

14

this acknowledgment of authority into a presumption, stating that "it is ICE policy to favor the release of [noncitizens] who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain."[16] ICE leadership subsequently reiterated this policy in a 2012 announcement, clarifying that the 2000 and 2004 ICE memorandums are "still in effect and should be followed" and that "[t]his policy applies at all times following a grant of protection, including during any appellate proceedings and throughout the removal period."[17] Finally, in 2021, Acting ICE Director Tae Johnson circulated a memorandum to all ICE employees reminding them of the "longstanding policy" that "absent exceptional circumstances, . . . noncitizens granted asylum, withholding of removal, or CAT protection by an immigration judge should be released. . ."[18] Director Johnson clarified that "in considering whether exceptional circumstances exist, prior convictions alone do not necessarily indicate a public safety threat of danger to the community."[19]

On February 18, 2025, ICE issued a directive to agents encouraging them to seek to re-detain noncitizens with final removal orders who had been previously released from custody for the purpose of removal to previously recalcitrant countries of origin, or to third countries.[20] The directive did not provide justification as to why detention of noncitizens complying with orders of supervision would be necessary to effectuate removal to country of origin or otherwise.

---

[16] P. Ex. 1 at 3.

[17] P. Ex. 1 at 4.

[18] P. Ex. 1 at 5.

[19] P. Ex. 1 at 5.

[20] P. Ex. 5.

GROUNDS FOR RELIEF

**Ground One: Petitioner's continued detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable.**

The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. Petitioner has a liberty interest in remaining free from physical confinement where removal is not reasonably foreseeable. Respondents have violated the Due Process Clause of the Fifth Amendment because Petitioner's removal is not reasonably foreseeable.

The INA requires mandatory detention of individuals with final removal orders only during the 90-day removal period. 8 U.S.C. § 1231(a)(2). A noncitizen who is not removed within that period "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added). However, in *Zadvydas, supra*, the Supreme Court concluded that due process imposes an "implicit limitation" upon 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 689. Specifically, the Court held that 8 U.S.C. § 1231(a)(6) authorizes detention only for "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States" and that six months of detention after the removal order is final is "presumptively reasonable." *Id.* at 701. The Court further determined that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6) because he has been detained for more than 90 days since he was ordered removed. Therefore, the *Zadvydas* framework applies.

16

Petitioner's continued detention is unreasonable, and his removal is not reasonably foreseeable. As of the filing date of this Petition, 4 months and 12 days have passed since Petitioner was ordered removed to Cuba but granted withholding of removal. He cannot be removed to Cuba, and Respondents' attempts to remove him to Cuba are unlawful, so the Constitution and the holding of *Zadvydas* compel his immediate release. *See id.*, 533 U.S. at 700-01 (describing release as an appropriate remedy); 8 U.S.C. § 1231(a)(6) (authorizing release "subject to . . . terms of supervision").

**Ground Two: Petitioner's continued detention violates the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6).**

As provided in Ground One, above, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas*, *supra*. Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6) because it is both unreasonable and because removal is not reasonably foreseeable. As further discussed in Ground Three, incorporated herein by reference, Petitioner poses neither a risk of flight nor a danger to the community. Rather, his continued detention under 8 U.S.C. § 1231(a)(6) is driven by sweeping and arbitrary DHS policies. Moreover, and as discussed in Ground One, Petitioner's removal is not reasonably foreseeable. This Court should order that Petitioner be released.

**Ground Three: ICE's continued detention of Petitioner, without providing an individualized custody assessment pursuant to ICE policy, violates the Administrative Procedures Act, 5 U.S.C. § 706(2)(A).**

Under the Administrative Procedures Act (APA), a court must hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. §706(2). An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).* Courts "defer to an agency's determinations so long as the agency 'gives adequate reasons for its decisions, in the form of a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Nat. Res. Def. Council, Inc. v. United States Env't Prot. Agency*, 961 F.3d 160, 170 (2d Cir. 2020) (cleaned up).

As noted in 8 C.F.R. § 241.4, before the end of the 90-day removal period, the local ICE field office with jurisdiction over a noncitizen's detention must conduct a custody review to determine whether the noncitizen should remain detained. *See* 8 C.F.R. § 241.4(c)(1), (h)(1), (k)(1)(i). A copy of any decision to release or continue to detain a noncitizen "shall be provided to the detained [noncitizen]." 8 C.F.R. § 241.4(d). Where ICE decides that a noncitizen will stay detained, the decision provided to the noncitizen "shall briefly set forth the reasons for the continued detention." *Id*. The criteria for determining if continued detention is warranted mainly concerns whether the noncitizen presents a risk of flight or danger to the community. 8 C.F.R. § 241.4(e). The review panel members must also determine

that travel documents are not available or that "immediate removal, while proper, is otherwise not practicable or not in the public interest." *Id*.

Petitioner's continued detention without an individualized assessment is arbitrary and capricious. "It is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990); *see also United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that government agencies are required to follow their own regulations). In addition, continuing to detain Petitioner is contrary to ICE's longstanding policy of releasing individuals granted withholding of removal absent an exceptional reason not to do so. Even the new directives regarding removal to third countries, which on their face are unconstitutional and in violation of the INA because they fail to provide the requisite due process and comply with the regulations, do not provide any reason that a noncitizen in Petitioner's position should not be released. Accordingly, Petitioner's continued detention violates the APA because it is arbitrary and capricious and not in accordance with law.

This Court should order that Petitioner be released because Respondents have not demonstrated that he was afforded proper procedures related to his continued detention, or that he warrants continued detention under the regulations. Accordingly, his continued detention is unlawful.

**Ground Four: ICE's policy to remove noncitizens to a third country without an adequate opportunity to seek fear-based protection violates Petitioner's Fifth Amendment right to due process and constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706.**

Petitioner incorporates the above paragraphs by reference as if fully set forth herein.

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review." 5 U.S.C. §

702. Further, the APA compels a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary [or] capricious, . . . otherwise not in accordance with law," *id.* § 706(2)(A), or "short of statutory right," *id.* § 706(2)(C). The APA also compels a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

As explained above, Petitioner has a due process right to meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country. *See Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019). Suarez-Ramirez also has a due process right to implementation of a process or procedure to afford these protections. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991). Respondents, however, have adopted a policy—set forth in the March 30 memo and July 9 directive—that is arbitrary and capricious and deprives Petitioner of meaningful notice and an opportunity to present a fear-based claim to an immigration judge prior to his deportation to a third country. Moreover, Respondents' policy also violates the INA and implementing regulations which mandate that Respondents refrain from removing Petitioner, and similarly situated individuals, to a third country where they will likely be persecuted or tortured, thus requiring Respondents to provide meaningful notice of deportation to a third country and the opportunity to present a fear-based claim to an immigration judge before deporting an individual to a third country. In this case, the March 30 memo and July 9 directive demonstrate Respondents do not intend to observe those protections.[21]

---

[21] *See also* Gerald Imray, *3 deported by U.S. held in African prison despite completing sentences, lawyers say*, PBS NEWS (Sept. 2, 2025),

At present it is unclear exactly what immigration court process Petitioner has received. A motion to reopen IJ jurisdiction was granted in his case on August 6, 2025, and a second removal order was entered on August 22, 2025. To the extent those proceedings involved reopening for an IJ to enter an order of removal to Mexico, it is likely that the process Petitioner received was inadequate. Petitioner, who is detained and does not read or write English, would not have had adequate time to obtain an attorney or prepare a fear-based defense to removal in the two short weeks between reopening of his case and the issuance of the new removal order. "After all, a 'full and fair hearing' before 'an impartial adjudicator' is a basic requirement of due process in the context of deportation proceedings." *Candido-Bolanos v. Lyons, et. al.,* Case No. 2:25-cv-01359-RFB-EJY, ECF No. 39 at 4 (Dist. Nev. Oct. 8, 2025), quoting *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001).

The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Court should hold that Respondents' actions and policy are unlawful and compel that—before any attempt is made to deport him to a third country—Petitioner be provided with meaningful notice and opportunity to present a fear-based claim.

**Ground Five: Petitioner's continuing detention solely on the basis of facilitating third country removal pursuant to recent ICE policy violates the Due Process Clause of the Fifth Amendment.**

To the extent that Petitioner's continued detention is meant to facilitate his removal to a third country, his detention is unlawful because, as argued in Ground Four (incorporated here by reference), ICE's procedure for third country removal is arbitrary and capricious and does not comply with due process. Continuing

---

https://www.pbs.org/newshour/amp/nation/3-deported-by-u-s-held-in-african-prison-despite-completing-sentences-lawyers-say.

detention solely for the purpose of facilitating an unconstitutional removal renders his current custody unconstitutional. Accordingly, this Court should order Petitioner's immediate release.

### PRAYER FOR RELIEF

Accordingly, Alexander Suarez-Ramirez respectfully requests that this Court:

1.    Issue a writ of habeas corpus to have Alexander Suarez-Ramirez brought before the Court so that he may be discharged from his unconstitutional confinement;

2.    Conduct an evidentiary hearing at which proof may be offered concerning the allegations in this amended petition and any defenses that may be raised by respondents; and

3.    Grant such other and further relief as, in the interests of justice, may be appropriate.

Dated: 11/25/2025

Rene L. Valladares
Federal Public Defender

/s/ Laura Barrera
Laura Barrera
Assistant Federal Public Defender
*Filed with the verbal permission of and on behalf of Alexander Suarez-Ramirez

### DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the facts alleged in this petition are true and correct to the best of counsel's knowledge, information, and belief.

Dated November 26, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Laura Barrera*

Laura Barrera
Assistant Federal Public Defender